1
2
3

Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in The U.S. DISTRICT COURT at Seattle, Washington.

.....December.....17.....20.08

BRUCE RIFKIN,    Clerk

By.............................................Deputy

4
5
6

7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  | UNITED STATES OF AMERICA,

10 |          Plaintiff,

11 |         v.

12 | ROBERT MIRACLE,
MUKHTAR KECHIK, and
13 | FAHIMI FISAL,

14 |         Defendants.

NO. **CR08 - 427 JLR**

INDICTMENT

15

16

THE GRAND JURY CHARGES THAT:

17

## COUNT 1
### (Conspiracy)

18

1.      Beginning in or about August 2004 and continuing until in or about October

19

2007, at Seattle and elsewhere, in the Western District of Washington, ROBERT

20

MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL did knowingly and willfully

21

combine, conspire, and agree to commit offenses against the United States, to wit:  mail

22

fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in

23

violation of Title 18, United States Code, Section 1343.

24
25
26
27
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## I.    The Agreement

2        2.      ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL agreed

3    that they would establish and operate a series of companies that supposedly either

4    provided oil-field services, or developed oil and gas fields, in Southeast Asia, including,

5    in the order of their founding:  Laramie Petroleum, Inc. ("Laramie"); MCube Petroleum,

6    Inc. ("MCube"); Diski Limited Liability Company ("Diski LLC"); Basilam Limited

7    Liability Company ("Basilam LLC"); and Halmahera-Rembang Limited Liability

8    Company ("Hal-Rem LLC").

9        3.      ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL further

10   agreed that they would solicit investors to invest in these companies.  ROBERT

11   MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL agreed that, in doing so, they

12   would falsely represent to investors that previous companies were successful and were

13   producing revenues and profit.  ROBERT MIRACLE, MUKHTAR KECHIK, and

14   FAHIMI FISAL also agreed that they would falsely represent to investors that the funds

15   being solicited would be used for the particular investment at issue.  ROBERT

16   MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL further agreed that they would

17   use the United States Postal Service and private and commercial interstate carriers, as

18   well as interstate wires, to solicit and receive investments.

19       4.      In fact, none of Laramie, MCube, Diski LLC, Basilam LLC, and Hal-Rem

20   LLC was successful or produced any significant revenue or profit, either from the sale of

21   oil services or from the production of oil and gas.  Although ROBERT MIRACLE,

22   MUKHTAR KECHIK, and FAHIMI FISAL made dividend and interest payments to

23   investors in Laramie, MCube, Diski LLC, Basilam LLC, and Hal-Rem LLC, these

24   payments derived from investor funds, including funds of later investors.  Thus,

25   ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL agreed to use the

26   mails and interstate wires, and in fact used the mails and interstate wires, to operate a

27   fraud of the type commonly referred to as a Ponzi scheme.

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      5.      Based upon ROBERT MIRACLE's, MUKHTAR KECHIK's, and FAHIMI

2  FISAL's false representations, between September 2004 and October 2007, more than

3  300 investors deposited approximately $65,397,501 into bank accounts belonging to

4  ROBERT MIRACLE, Laramie, MCube, Diski LLC, Basilam LLC, and Hal-Rem LLC.

5  Of this amount, approximately $36,784,751.08 was repaid to investors as dividends based

6  upon the supposed production and sale of oil and gas and/or interest.

7      6.      The remaining approximately $28,612,750.24 of investors' money was

8  spent, among other things, (1) to pay costs of acquiring or attempting to acquire the rights

9  to production blocks in Indonesia, (2) to pay costs of attempting to develop those blocks,

10  (3) to pay salaries of employees of Laramie and MCube, and (4) to benefit ROBERT

11  MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL.  Of this amount, approximately

12  $6,864,082.00 was transferred to Malaysia and Indonesia.

13                      *II.      Manner and Means of the Conspiracy*

14  *A.      Background*

15      7.      Companies engaged in oil and gas production in Indonesia are required to

16  enter into either a Technical Assistance Contract ("TAC") with Pertamina, an Indonesian

17  governmental entity, or a Production Sharing Contract ("PSC") with BP Migas, another

18  Indonesian governmental entity.  Under either a TAC or a PSC, the companies obtain the

19  right to drill for and produce oil and gas from a particular area or "block;" they deliver

20  that oil and gas to Pertamina or BP Migas; and they subsequently receive payment from

21  Pertamina or BP Migas for (1) reimbursable capital and operating expenses and (2) a

22  portion of the revenues from the sale of the oil and gas produced.

23  *B.      The Defendants*

24      *Robert Miracle*

25      8.      ROBERT MIRACLE is a United States citizen.  During the 1980s,

26  ROBERT MIRACLE was a student at the University of Wyoming.  Between the 1980s

27  and 2004, ROBERT MIRACLE had various jobs, none of them in the oil and gas

28  industry.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      9.     Although, in soliciting investments, ROBERT MIRACLE claimed that he

2  had held "positions with . . . NASA as well as serving as advisor to Mr. Frank Wells, the

3  former President of Disney," ROBERT MIRACLE never was employed by either NASA

4  or by the Disney Corporation. Although, in soliciting investments, ROBERT MIRACLE

5  claimed that he never had been convicted of a crime, in 1994, ROBERT MIRACLE was

6  convicted in the State of Oregon of Theft in the First Degree for stealing textbooks from

7  professors' offices at Umpqua Community College.

8      10.    During the course of the conspiracy, ROBERT MIRACLE served as a

9  Director and President of Laramie. ROBERT MIRACLE also served as a Director and

10  Chief Executive Officer of MCube, until resigning as Chief Executive Officer in early

11  2007 and resigning as a Director on March 18, 2007. Notwithstanding his resignation

12  from these positions, ROBERT MIRACLE remained actively involved in managing

13  MCube. On September 24, 2007, ROBERT MIRACLE resumed his position as a

14  Director and became Chairman of the Board of Directors. During the conspiracy,

15  ROBERT MIRACLE also served as President of Diski LLC, President of Basilam LLC,

16  and President of Hal-Rem LLC.

17     *Mukhtar Kechik*

18      11.    MUKHTAR KECHIK is a Malaysian citizen. During the 1980s,

19  MUKHTAR KECHIK was a student at the University of Wyoming, where he met

20  ROBERT MIRACLE. Following school, MUKHTAR KECHIK returned to Malaysia

21  and worked for Petronas, a Malaysian governmental entity involved in oil development.

22  During the course of the conspiracy, MUKHTAR KECHIK served as a Director and

23  President of MCube.

24     *Fahimi Fisal*

25      12.    FAHIMI FISAL is a Malaysian citizen. In 2005, FAHIMI FISAL was hired

26  as the Finance Manager of MCube's subsidiary in Indonesia. Beginning March 9, 2007,

27  FAHIMI FISAL also served as a Director of MCube.

28  C.    *The Defendants' Companies*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Laramie Petroleum, Inc.*

13.     On August 16, 2004, ROBERT MIRACLE caused Laramie to be incorporated as a Washington corporation.  Laramie purportedly acted as an agent for oil-field services companies and, thereby, purportedly provided oil-field services to oil companies in Southeast Asia.  Laramie's articles of incorporation initially authorized the company to issue 1000 shares of stock.  Of these, 455 shares were held by ROBERT MIRACLE.

*MCube Petroleum, Inc.*

14.     On May 5, 2005, ROBERT MIRACLE and MUKHTAR KECHIK caused MCube to be incorporated as a Washington corporation.  MCube purportedly developed and operated oil and gas wells in Indonesia by entering into joint operating agreements with Indonesian companies, or acquiring companies, that owned TACs or PSCs to develop particular blocks in Indonesia.

15.     MCube purportedly obtained rights to develop five blocks.  First, MCube purportedly entered into a Joint Operating Agreement (JOA) with an Indonesian company, PT Putra Batumandi Petroleum (PBP), that held the TAC for the Batumandi block, an oil field 38 kilometers northwest of Medan.  Second, MCube retained an interest in three subsequently-established subsidiaries -- Diski LLC, Basilam LLC, and Hal-Rem LLC -- that purportedly were involved in developing the Diski, the Basilam, and the Halmahera and Rembang blocks, respectively.  The Batumandi, Diski, and Basilam blocks previously had produced oil or gas, but required reworking in order to continue production.  The Halmahera and Rembang blocks were remote blocks that had not previously been developed or produced oil or gas.

16.     MCube's corporate documents initially authorized it to issue 2,000 shares of stock.  Of these, 1001 were held by Laramie.  Beginning in May 2005, MCube sold shares of common stock to investors for $1,000 per share, with a minimum investment of $25,000.  MCube granted shares, without consideration, to family members and friends of ROBERT MIRACLE.  In March 2006, MCube increased the number of authorized shares

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   to 100,000,000 and conducted a stock split in which each shareholder received more than
2   10,000 shares for each original share.  Following this split, Laramie held more than
3   10,000,000 shares of MCube stock and ROBERT MIRACLE held more than 20,000,000
4   shares of MCube stock.

5       *Diski LLC*

6       17.    On December 8, 2005, ROBERT MIRACLE caused Diski LLC to be
7   incorporated as a Washington limited liability corporation.  Diski LLC purportedly
8   entered into a JOA with an Indonesian company, PT Putra Kenkana Diski Petroleum
9   (PKDP), that held the TAC for the Diski block, an energy-producing field located in the
10  North Sumatra Basin approximately 18 kilometers northwest of Medan, under which
11  Diski LLC was entitled to receive the majority of revenues generated by the joint venture
12  between it and PKDP.

13      18.    In December 2005, Diski LLC conducted an offering of 64 units (out of a
14  total of 130) units, at a price of $50,000 per unit, for a total of $3,200,000.  MCube was to
15  retain ownership of the other 66 units of Diski LLC.  Documents distributed in
16  connection with the offering projected that Diski LLC would begin producing oil during
17  the first quarter of 2006, and that the total return to investors would be $572,320 for each
18  $50,000 unit.  ROBERT MIRACLE subsequently filed a form with the Securities and
19  Exchange Commission (the SEC) on which he reported that Diski LLC had raised
20  $3,648,000 from investors during this offering.

21      *Basilam LLC*

22      19.    On March 8, 2006, ROBERT MIRACLE caused Basilam LLC to be
23  incorporated as a Washington limited liability corporation.  MCube purportedly entered
24  into a JOA with an Indonesian company, PT Putra Kenkana Basilam Petroleum (PKBP),
25  that held the TAC for the Basilam block, an energy-producing field located in the North
26  Sumatra Basin approximately 26 kilometers northwest of Medan, under which Basilam
27  LLC was entitled to receive the majority of the revenues generated by the joint venture
28  between it and PKBP.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

20.     In March 2006, Basilam LLC conducted an offering of 80 units (out of a total of 161) units, at a price of $50,000 per unit, for a total of $4,000,000.  MCube was to retain ownership of the other 81 units of Basilam LLC.  Documents distributed in connection with the offering projected that the total return to investors for the first six years would be $324,456 for each $50,000 unit.  ROBERT MIRACLE subsequently filed a form with the SEC on which he reported that Basilam LLC had raised $3,950,000 from investors during this offering.

*Hal-Rem LLC*

21.     On March 27, 2006, ROBERT MIRACLE caused Hal-Rem LLC to be incorporated as a Washington limited liability corporation.  MCube purportedly purchased all of the shares of Halmahera Petroleum, Ltd., and Orna International, Ltd., two British Virgin Islands corporations that purportedly hold the PSCs for the Halmahera block, an energy-producing field located on Halmahera Island, and the Rembang block, an energy-producing field located 400 kilometers east of Jakarta, and assigned the revenues from the production of oil and gas under these PSCs to Hal-Rem LLC.

22.     Unlike the Batumandi, Diski, and Basilam fields, which already had produced oil and/or gas, and which MCube purportedly was rehabilitating or bringing back into production, the Halmahera and Rembang blocks involved new exploration.  Nevertheless, the Hal-Rem LLC offering documents projected that the Halmahera and Rembang fields would begin producing oil and/or gas, and generating profits, by 2007 or 2008.

23.     Beginning in May 2006, Hal-Rem LLC conducted an offering of 600 (out of a total of 3,000) units at a price of $100,000 per unit, for a total of $60,000,000.  Investors were promised 2% interest per month until commercial production of oil commenced.  In addition to selling membership units, Hal-Rem LLC also sold convertible notes that promised investors 5% interest per month for nine months, plus the right to convert their notes into LLC units at the end of the nine-month period.  The Hal-Rem LLC offering documents projected that the total return to Hal-Rem LLC investors over 18

1  years would be $5,090,760 for each $100,000 unit.  Approximately $14,836,157 of

2  investor funds were deposited into bank accounts belonging to Hal-Rem LLC.

3  D.    Defendants' Fraud

4        Defendants' False Pretenses and Representations

5        24.    During the course of promoting and soliciting investments in Laramie,

6  MCube, Diski LLC, Basilam LLC, and Hal-Rem LLC, Defendants ROBERT MIRACLE,

7  MUKHTAR KECHIK, and FAHIMI FISAL, made numerous false representations,

8  including:

9              (a)    they falsely represented that prior companies (i.e., Laramie, MCube,

10                   Diski LLC, Basilam LLC) were successful;

11             (b)    they falsely represented that prior companies (i.e., Laramie, MCube,

12                   Diski LLC, and Basilam LLC) had sold oil-field services or were

13                   producing oil and gas;

14             (c)    they falsely represented that prior companies (i.e., Laramie, MCube,

15                   Diski LLC, and Basilam LLC) were generating revenue from the

16                   sale of services or the production of oil or gas;

17             (d)    they falsely represented that dividends and interest paid to

18                   shareholders or unit holders derived from revenues and profits from

19                   the sale of services or the production of oil or gas; and

20             (e)    they falsely represented that funds being solicited would be used to

21                   develop the company for which the funds were solicited (rather than

22                   diverted to pay dividends or interest to investors in prior companies).

23  For example, in soliciting Hal-Rem investors, ROBERT MIRACLE, MUKHTAR

24  KECHIK, and FAHIMI FISAL represented that Diski LLC and Basilam LLC had been

25  successful, and that Hal-Rem investors' money would be used for the sole purpose of

26  developing the Halmahera and Rembang blocks.

27        25.    Between 2004 and October 2007, Laramie issued a number of press releases

28  announcing contracts and/or licenses to provide services to the Malaysian oil industry.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  For example, on September 19, 2005, Laramie issued a press release announcing that it
2  had entered into a memorandum of understanding to build a refinery in Malaysia. The
3  press release stated that the contract was for $115 million and that work would begin
4  immediately once the contract was finalized.

5       26.    Between 2005 and October 2007, MCube issued a number of "investor
6  updates" announcing its purported progress in entering agreements for the rights to
7  develop various blocks and in producing oil and/or gas from those blocks. For example,
8  on October 14, 2005, MCube issued an investor update that reprinted an e-mail from
9  MUKHTAR KECHIK to ROBERT MIRACLE that falsely announced that one of the
10 wells at Batumandi was "in production as of Monday." On January 11, 2006, MCube
11 issued an investor update that falsely stated that another well at Batumandi was producing
12 between 500 and 3200 barrels of oil per day and that a well at Diski was producing 3,500
13 barrels of oil per day. And on February 10, 2006, MCube issued an investor update that
14 falsely stated that Diski "ha[d] produced nearly 170,000 barrels of oil."

15      27.    In May 2006, ROBERT MIRACLE distributed materials to promote Hal-
16 Rem LLC that included the false statement that "[t]he first two fields [acquired by
17 MCube] are currently generating approximately $2.5 million per month for MCube and
18 its investors." And, on November 1, 2006, MUKHTAR KECHIK announced at a
19 conference in Dubai that MCube was developing five blocks in Indonesia, and that three
20 of these blocks were producing more than 5,000 barrels of oil per day, as well as some
21 gas.

22      28.    ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL caused
23 substantial payments to be made to investors in Laramie, MCube, Diski LLC and Basilam
24 LLC that they falsely represented were profits from the production of oil and/or gas. For
25 example, between January 2005 and October 2007, approximately $1,960,160.78 was
26 paid back to investors from bank accounts belonging to Laramie. In June 2006, the Board
27 of Directors of MCube, which included ROBERT MIRACLE and MUKHTAR KECHIK,
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  authorized a dividend to shareholders of $1.97 a share, representing a total dividend
2  payment to shareholders of $1,901,780.

3      29.     Similarly, during 2006 and early 2007, Diski LLC investors were paid
4  $99,622 for each unit that they purchased (with the result that Diski LLC investors
5  received their $50,000 principal, and a nearly-100% profit).  During 2006 and early 2007,
6  Basilam LLC investors were paid $61,763 for each unit that they had purchased (with the
7  result that Basilam LLC investors received their $50,000 principal, and a smaller profit).
8  Investors in Hal-Rem LLC – the last investment vehicle created by ROBERT MIRACLE,
9  MUKHTAR KECHIK, and FAHIMI FISAL never received any dividends, although they
10 received monthly interest payments for a time.

11     30.     On December 15, 2006, the Washington State Department of Financial
12 Institutions entered a Statement of Charges and Notice of Intent to Cease and Desist
13 against ROBERT MIRACLE and others prohibiting them from selling securities of
14 Laramie, MCube, Diski LLC, Basilam LLC, and Hal-Rem LLC.  Following the entry of
15 this order, ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL ceased
16 selling stock and membership interests in Laramie, MCube, Diski LLC, Basilam LLC,
17 and Hal-Rem LLC.  ROBERT MIRACLE, MUKHTAR KECHIK and FAHIMI FISAL
18 continued to raise some money by borrowing money from investors in ROBERT
19 MIRACLE's name and that of MCube, but they were unable to raise as much money as
20 they previously had raised.

21     31.     In approximately February 2007, Laramie, MCube, Diski LLC, Basilam
22 LLC, and Hal-Rem LLC ceased making payments to most investors.  ROBERT
23 MIRACLE initially told investors that the Indonesian government had fallen behind in
24 paying MCube.  ROBERT MIRACLE subsequently told investors that the Indonesian
25 companies with which MCube, Diski LLC, and Basilam LLC had entered into joint
26 ventures had previously-existing debts to the Indonesian government.  ROBERT
27 MIRACLE claimed that, as a result, the Indonesian government had withheld payment for
28 oil and gas produced by the joint ventures.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     In fact, none of the defendants' companies ever derived any significant revenue from the sale of oil-field services or from the production oil or gas. Laramie never actually provided oil-field services or derived any revenue from the sale of oil-field services. The Batumandi, Diski, and Basilam blocks produced, at most, a few hundred gallons of oil and never generated any significant revenue for any of MCube, Diski LLC, or Basilam LLC. MCube never even entered into an agreement to operate the Basilam field. And the Halmahera and Rembang blocks never produced any oil or natural gas. The funds that ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL used to pay distributions of supposed profits to investors in Laramie, MCube, Diski LLC and Basilam LLC, as well as interest to investors in Hal-Rem LLC, all derived from other investors' investments.

*Defendants' Falsification of Production and Financial Records*

33.     MCube's, Diski LLC's, Basilam LLC's reports of oil and gas production, and of revenues from Pertamina, were the result of an elaborate effort by ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL. Beginning in 2005, ROBERT MIRACLE told MUKHTAR KECHIK and FAHIMI FISAL that investors were concerned about MCube's lack of production of oil and gas and lack of revenue. On December 9, 2005, ROBERT MIRACLE sent an e-mail to MUKHTAR KECHIK that read, in part:

> [W]e have some pretty alarmed investors over here right now. Everything is taking longer than we were told. Every week we expect things to happen and there is always a delay. . . . Mcube does not have any assets yet. Nor do we have any oil coming out of the ground. No revenue, even a small bit. We could start losing committed investors unless things start happening. . . . Things need to get going. People are getting nervous over here.

34.     Although MCube had issued an investor update on February 10, 2006, that falsely reported that the Diski block had produced nearly 170,000 barrels of oil, on February 16, 2006, MUKHTAR KECHIK sent an e-mail to ROBERT MIRACLE that read, in part:

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> While our people testing the well to see if we need to
> kill the well for fishing, they found out the well was
> producing oil about 130 bopd [barrels of oil per day] @ 30%
> watercut although initially it was producing 100% water. The
> well was producing 8 hours initial with traces of oil and then
> another 8 hours with oil before the well was shut in.

Eight days later, on February 26, 2006, MUKHTAR KECHIK sent an e-mail to ROBERT

MIRACLE that stated that "[o]ur tank was filled by 75 bbl of oil and we are shipping this

to Pertamina. This is our first oil???"

35.    Notwithstanding the fact that the Batumandi, Diski, and Basilam oil fields

had produced less than 100 gallons of oil, beginning in March 2006, MUKHTAR

KECHIK and FAHIMI FISAL began providing ROBERT MIRACLE "simulation files"

showing supposed oil production and revenue from the Batumandi, Diski, and Basilam

fields. ROBERT MIRACLE then represented to investors that the figures in these

simulation files represented actual production and revenue.

36.    For example, on March 7, 2006, FAHIMI FISAL sent an e-mail to

MUKHTAR KECHIK, which MUKHTAR KECHIK forwarded to ROBERT MIRACLE,

that contained "the simulation file for oil production from Dec '05 to Feb '06 for BM

[Batumandi] & Diski." This e-mail listed as one of it "main assumptions" the fact that

"[m]onthly production is as per the given quantity." The simulation file showed that

Batumandi had produced more than 58,000 barrels of oil and generated more than

$1,900,000 million of revenue for MCube and that Diski had produced more than 125,000

barrels of oil and generated more than $2,700,000 million of revenue for MCube between

December 2005 and February 2006.

37.    ROBERT MIRACLE subsequently reported the results in the simulation

file to investors as actual results. On March 14, 2006, ROBERT MIRACLE sent an e-

mail to investors that summarized these results and stated that Diski LLC had "reached

the point where we are going to begin disbursing revenue from operations at our Diski

Block." Thus, ROBERT MIRACLE's e-mail announced that Diski LLC would pay

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  $50,688.40 per unit to investors in Diski LLC, an amount that represented a full return of

2  investors' $50,000 investment and a small profit.

3       38.    ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL all

4  recognized that the "simulation files" contained made-up production and revenue figures.

5  On March 16, 2006, FAHIMI FISAL sent an e-mail to MUKHTAR KECHIK that stated,

6  in part:

> I wish to highlight my concerns on the inclusion of the
> 'simulation figures' into the Jakarta financial books as
> requested by Rob.
>     In principal, I fully support if the figures are used for
> marketing or investment promotion outside Indonesia.
> However, to book-in those figures into our Jakarta books will
> result in the followings:-
> . . . .
>     v.     Such a drastic increase in 'production' from the
> fields known as 'dormant' for quite sometime will definitely
> attract the attentions of Pertamina. It won't be long before
> they come in and discover the actual production figure.

MUKHTAR KECHIK forwarded this e-mail to ROBERT MIRACLE, who sent a reply

e-mail to MUKHTAR KECHIK, with a copy to FAHIMI FISAL, that stated, in part

"[t]wo accounts just for now. We will not need this again."

     39.    In fact, ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL

continued falsely to report that Batumandi, Diski, and Basilam were producing oil and/or

gas and generating revenue. In many cases, ROBERT MIRACLE actually provided

MUKHTAR KECHIK and FAHIMI FISAL the results he wanted MUKHTAR KECHIK

and FAHIMI FISAL to report. For example, on April 17, 2006, ROBERT MIRACLE

sent MUKHTAR KECHIK and FAHIMI FISAL an e-mail that began "[t]ime to make the

shareholders happy. Please enter and send as before the following numbers for

production." The e-mail then set forth daily production figures, in barrels of oil, for

Batumandi and Diski through March 31, 2006.

     40.    On April 23, 2006, ROBERT MIRACLE sent a follow-up e-mail to

MUKHTAR KECHIK and FAHIMI FISAL that asked them to

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  send the same kind of revenue report that you sent last
   time. . . . Then you will need to resend these new books to
2  R[] and I. From this point forward there will be 2 sets of
   books. The only difference between the 2 will be incoming
3  revenue. I will then have money sent to you that will
   represent that revenue. The only person from now on to see
4  the ACTUAL books in this country is me. The books with the
   other revenue will come every month to R[] and I. We will
5  talk at length about this when I come to Jakarta next month.

6

7      41.    That same day, FAHIMI FISAL sent a reply e-mail to ROBERT

8  MIRACLE, with a copy to MUKHTAR KECHIK, that read, in part:

9          if this is going to be reported in the Stat Acc in the US, it is
   also subjected to a financial audit at some point of time and
10 we'll surely get caught. However, it is ok if it's only confined
   to promotional or investment purposes as discussed earlier.
11

12 On April 27, 2006, FAHIMI FISAL sent an e-mail to ROBERT MIRACLE, with a copy

13 to MUKHTAR KECHIK, that contained two different financial statements for MCube.

14 One statement accurately showed that MCube had $0 of revenue for the first quarter of

15 2006. The other showed a total of more than $7,100,000 dollars of fictitious revenue

16 from the sale of oil from Batumandi and Diski. Two weeks later, on May 9, 2006, as

17 requested, FAHIMI FISAL sent an e-mail to ROBERT MIRACLE with a copy to

18 MUKHTAR KECHIK that contained a more detailed spreadsheet purporting to show that

19 Batumandi and Diski had produced the quantities of oil listed in ROBERT MIRACLE's

20 e-mail of April 17, 2006, and received more than $6,400,000 of revenue for that oil. In

21 an e-mail dated May 12, 2006, ROBERT MIRACLE reported these made-up results to

22 MCube investors.

23     42.    Throughout 2006, ROBERT MIRACLE, MUKHTAR KECHIK, and

24 FAHIMI FISAL continued falsely to report that MCube was generating oil and receiving

25 revenue. For example, on November 15, 2006, FAHIMI FISAL sent ROBERT

26 MIRACLE an e-mail, with a copy to MUKHTAR KECHIK, asking ROBERT MIRACLE

27 to "advise our strategy for September & October and our approach in handling the

28

INDICTMENT/MIRACLE (CR08-____) - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  auditors." On November 16, 2006, ROBERT MIRACLE sent a reply e-mail to FAHIMI

2  FISAL, again with a copy to MUKHTAR KECHIK, that read:

3

4          Dear Fahimi,

           Here is the report.
5
           September.
6
           Basilam.      Total revenue 3,365,304  Cost recovery portion
7          is 2,377,121.21. Most of this is CAPEX

8          Diski          Total revenue 800,439.90

9          Batumandi.   714,217.21

10         October Total.

11         Basilam      Total Revenue $546,830.90  No CAPEX.  CR.
           Diski        Total Revenue $815,332.70
12         Batumandi    Total Revenue 693,889.00

13         Please make the financials for P[] based on the above ASAP.
           Preferably by tomorrow and get them to him and me.  Thanks.
14
           You will need to prepare for Deloitte and Touche.  I think we
15         need to talk in person about this.  Please plan to arrive here on
           Friday the 2nd of December for a 2 day visit.  We will send
16         you the ticket.

17
        *Defendants' Efforts to Conceal their Fraudulent Scheme*
18
19         43.    ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL went to

20  great lengths to prevent other employees of Laramie, MCube, Diski LLC, Basilam LLC,

21  and Hal-Rem LLC from discovering that Batumandi, Diski, and Basilam blocks were not

22  producing oil or gas, and that MCube, Diski LLC, and Basilam LLC, were not receiving

23  revenues from Pertamina. For example, on May 23, 2006, before traveling to Indonesia

    with V.P., a member of MCube's Board of Directors, ROBERT MIRACLE sent an e-
24
    mail to MUKHTAR KECHIK and FAHIMI FISAL that read:
25

26         Dear Mukhtar and Fahimi,

27         Things to remember about V[] when we are together in
           Indonesia
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1.  Batumandi and Diski have been flowing since
    December with of course shutdowns for rehab work.
    a.  Batumandi1 is flowing at about 1450
        barrels per day. B2 at about 1600
        barrels.
    b.  Diski flows at around 3000 barrels per
        day.
2.  Basilam has been rehabbed and we have installed new
    compressors from Ingersoll Rand on 9 wells. It has
    been flowing at about 18 mcf per day, but we expect
    that to start to taper. It has been flowing for 37 days
    now. There are a lot of other horizons that we are
    going to explore in the future on Basilam that have
    upside potential.
3.  Total revenue to Mcube is about $3.2 million per
    month now from the 3 blocks.
4.  Halmahera/Rembang combined reserves. 1.2 Billion
    barrels. 5 TCF gas. We expect onshore production in
    2 years on Halmahera and beginning of offshore on
    both Halmahera and Rembang in 3.5 to 4 years. Not 6.
5.  Pertamina always pays on the 25th. We are of course
    expecting $3.2 million on Thursday the 25th of this
    month.

Finally, when we are in Medan, please make sure that things
are happening at Diski and Batumandi that make it look like
we are flowing oil at the above rates. She is not stupid, but
she doesn't know oil at all, so just make it look good please.
Please tell D[] or whoever to keep the story straight. Beyond
the $10 million, if she likes what she sees, her father and his
friends might be inclined to give us another $100 million or
so. . . .

44.    ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL also

created forged documents to support their fraud. For example, they created forged bank

statements for an account at MCube's Indonesian subsidiary's bank account at Bank

Niaga in Indonesia. These forged bank statements were based on actual original bank

statements, but contained additional items, including deposits totaling $6,780,052 from

Pertamina and payments of $3,325,000 to El Nusa Drilling. The former of these reflected

purported revenue from oil production that MCube did not actually receive. The latter

reflected purported payments for drilling that MCube did not actually conduct.

45.    In July 2006, FAHIMI FISAL noticed that the forged bank statements that

ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL previously had

created contain figures that differed from those in the "simulation files" that they

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  previously had provided to investors.  As a result, on July 4, 2006, FAHIMI FISAL sent

2  an e-mail to ROBERT MIRACLE that read, "I notice some mismatch of the simulated

3  revenue vs the revenue received in the bank statement as follows."  The e-mail then listed

4  the monthly discrepancies between the revenue reported in the "simulation files" as

5  compared to the revenue shown in the forged bank statements.  The discrepancies for the

6  months of January 2006 through April 2006 varied between approximately $600,000 and

7  approximately $1,600,000 per month.  FAHIMI FISAL's e-mail concluded "[t]o response

8  to P[], I need to clarify on the whole scenario in order not to contradict with all that we

9  have discussed before . . . .  Please advise."

10                                      *III.    Overt Acts*

11        46.    In furtherance of the conspiracy, and to accomplish one or more of the

12  objects of the conspiracy, ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI

13  FISAL committed and caused to be committed one or more of the following overt acts in

14  the Western District of Washington:

15        a.    On May 5, 2005, ROBERT MIRACLE and MUKHTAR KECHIK,

16              caused MCube to be incorporated in the State of Washington.

17        b.    On December 8, 2005, ROBERT MIRACLE caused Diski LLC to be

18              incorporated as a Washington limited liability corporation.

19        c.    Beginning in December 2005, ROBERT MIRACLE conducted an

20              offering of 64 units of Diski LLC.

21        d.    On March 7, 2006, FAHIMI FISAL sent ROBERT MIRACLE an e-

22              mail that contained a "simulation file" that showed oil production

23              and revenue that did not, in fact, exist.

24        e.    On March 8, 2006, ROBERT MIRACLE caused Basilam LLC to be

25              incorporated as a Washington limited liability corporation.

26        f.    On March 14, 2006, ROBERT MIRACLE sent an e-mail to investors

27              that falsely reported, based upon the simulation file sent to him by

28              FAHIMI FISAL, that the Batumandi and Diski fields had produced

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    oil and generated revenue that they had neither produced nor

2    generated.

3    g.    Beginning in March 2006, ROBERT MIRACLE conducted an

4    offering of 81 units of Basilam LLC.

5    h.    On March 27, 2006, ROBERT MIRACLE caused Hal-Rem LLC to

6    be incorporated as a Washington limited liability corporation.

7    i.    Beginning in May 2006, ROBERT MIRACLE conducted an offering

8    of 600 units of Hal-Rem LLC.

9    j.    On November 1, 2006, MUKHTAR KECHIK announced at a

10    conference in Dubai that three blocks in Indonesia being developed

11    by MCube were producing more than 5,000 barrels of oil per day.

12    All in violation of Title 18, United States Code, Section 371.

13

14    <u>**COUNTS 2-6**</u>
<br>**(Mail Fraud)**

15

16    47.    Beginning in or about August 2004, and continuing until in or about

October 2007, at Seattle and elsewhere, in the Western District of Washington, ROBERT

17  MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL devised and intended to devise,

18  and aided and abetted in devising, a scheme and artifice to defraud, and to obtain money

19  and property by means of false and fraudulent pretenses, representations, and promises,

20  and the concealment of material facts.

21    48.    The Grand Jury realleges and incorporates, as if fully set forth herein,

22  Paragraphs 1 through 46 of this Indictment as setting forth the scheme and artifice to

23  defraud and to obtain money and property from investors in Laramie, MCube, Diski LLC,

24  Basilam LLC, and Hal-Rem LLC.  It was a part of the scheme and artifice that ROBERT

25  MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL knowingly made and caused to

26  be made the material misrepresentations, and concealed the material facts, set forth in

27  those Paragraphs.  It was a further part of the scheme and artifice that ROBERT

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL intended by their actions to

2  defraud investors.

3      49.    On or about the dates set forth below, at Seattle and elsewhere, within the

4  Western District of Washington, having devised the above-described scheme and artifice,

5  ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL for the purpose of

6  executing this scheme and artifice, did knowingly cause to be delivered by mail by the

7  United States Postal Service and private and commercial interstate carriers, according to

8  the directions thereon, the following mail matter, each delivery of which constitutes a

9  separate Count of this Indictment.

| Count | Date | Sender | Addressee | Item Mailed |
|-------|------|--------|-----------|-------------|
| 2 | 4/27/06 | MCube | S.C.<br>Aurora, Colorado | Certificate for one unit of Basilam LLC |
| 3 | 9/21/06 | MCube | M.M. & J.M.<br>Ligonier, Pennsylvania | Certificate for one unit of Hal-Rem LLC |
| 4 | 9/26/06 | MCube | P.B.<br>Pearland, Texas | Certificate for one unit of Hal-Rem LLC |
| 5 | 10/27/06 | MCube | S.W.<br>Vashon, Washington | Convertible promissory note for $100,000 loan to Hal-Rem LLC |
| 6 | 11/13/06 | MCube | F.W.<br>Waynesboro, Georgia | Certificate for three units of Hal-Rem LLC |

    All in violation of Title 18, United States Code, Section 1341 and 2.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNTS 7-11
### (Wire Fraud)

50.     Beginning in or about August 2004, and continuing until in or about October 2007, at Seattle and elsewhere, in the Western District of Washington, ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL devised and intended to devise, and aided and abetted in devising, a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

51.     The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 through 46 of this Indictment as setting forth the scheme and artifice to defraud and to obtain money and property from investors in Laramie, MCube, Diski LLC, Basilam LLC, and Hal-Rem LLC.  It was a part of the scheme and artifice that ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL knowingly made and caused to be made the material misrepresentations, and concealed the material facts, set forth in those Paragraphs.  It was a further part of the scheme and artifice that ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL intended by their actions to defraud investors.

52.     On or about the dates set forth below, at Seattle and elsewhere, within the Western District of Washington, having devised the above-described scheme and artifice, ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL, for the purpose of executing this scheme and artifice, did knowingly cause to be transmitted by wire communication in interstate or foreign commerce writings, signs, signals, pictures, and sounds, each transmission of which constitutes a separate count of this Indictment.

| Count | Date | Sender | Recipient | Wire Transmission |
|---|---|---|---|---|
| 7 | 6/19/06 | Bank of America New York | Columbia State Bank Washington | $100,000 wire transfer for purchase of convertible note of Hal-Rem LLC by J.P. & J.P. |
| 8 | 10/16/06 | Wells Fargo Bank Texas | Columbia State Bank Washington | $25,000 wire transfer in partial payment for purchase of one unit of Hal-Rem LLC by M.P. |

INDICTMENT/MIRACLE (CR08-____) - 20

| Count | Date | Sender | Recipient | Wire Transmission |
|-------|------|--------|-----------|-------------------|
| 9 | 10/16/06 | Charles Schwab & Co. California | Columbia State Bank Washington | $100,000 wire transfer for purchase of one unit of Hal-Rem LLC by E.B. |
| 10 | 10/17/06 | US Bank Minnesota Minnesota | Columbia State Bank Washington | $100,000 wire transfer for purchase of one unit of Hal-Rem LLC by D.A. |
| 11 | 1/25/07 | Bank of the Cascades Oregon | Columbia State Bank Washington | $200,000 wire transfer to fund loan from M.B. to MCube |

All in violation of Title 18, United States Code, Section 1343 and 2.

## COUNT 12
### (Conspiracy to Commit Money Laundering)

53.     Beginning in or about August 2004 and continuing until in or about October

2007, at Seattle and elsewhere, in the Western District of Washington, ROBERT

MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL did knowingly and willfully

combine, conspire, and agree to commit offenses against the United States, to wit:  money

laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), and

money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

### I.     The Agreement

54.     ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL

operated a fraudulent investment scheme in which they solicited investments in a series of

companies, including Laramie, MCube, Diski LLC, Basilam LLC, and Hal-Rem LLC,

that purportedly sold oil-field services, and produced oil and natural gas, in Southeast

Asia. Although none of these companies sold any services, or produced significant

amounts of oil or gas, ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL

agreed that they would use profits from the fraudulent sale of interests in Laramie,

Mcube, Diski LLC, Basilam LLC, and Hal-Rem LLC to pay early investors more-than-

100% returns.  They did this to make it appear these companies were successful, in order

fraudulently to solicit even larger investments in subsequent companies.

55.     ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL

established subsidiaries of Laramie and MCube in Malaysia and Indonesia, and used

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 │ those subsidiaries to create the false impression that Laramie, MCube, Diski LLC,

2 │ Basilam LLC, and Hal-Rem LLC actually were selling oil-field services and producing

3 │ oil and natural gas, and were generating revenue and profits.  ROBERT MIRACLE,

4 │ MUKHTAR KECHIK, and FAHIMI FISAL agreed that they would transfer funds raised

5 │ from investors in the United States to fund MCube's subsidiaries in Malaysia and

6 │ Indonesia.  They did so to make it appear that MCube, Laramie, Mcube, Diski LLC,

7 │ Basilam LLC, and Hal-Rem LLC were selling services and producing oil and natural gas,

8 │ and were generating revenue and profits, in order fraudulently to solicit additional

9 │ investments in these companies.

10 │        *II. Manner and Means of the Conspiracy*

11 │   56. The Grand Jury realleges and incorporates, as if fully set forth herein,

12 │ Paragraphs 1 through 52 of this Indictment as setting forth the manner and means of the

13 │ conspiracy to launder money.

14 │            *III. Overt Acts*

15 │   57. In furtherance of the conspiracy, and to accomplish one or more of the

16 │ objects of the conspiracy, ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI

17 │ FISAL committed and caused to be committed one or more of the following overt acts in

18 │ the Western District of Washington:

19 │     a. On March 21, 2006, ROBERT MIRACLE, MUKHTAR KECHIK,

20 │       and FAHIMI FISAL caused a $50,688.12 dividend/unit to be paid to

21 │       each Diski LLC shareholder.

22 │     b. On March 24, 2006, ROBERT MIRACLE, MUKHTAR KECHIK,

23 │       and FAHIMI FISAL caused $49,975 to be transferred from an

24 │       account belonging to MCube at Columbia State Bank, in

25 │       Washington, to an account belonging to MCube at Bank Niaga, in

26 │       Indonesia.

27 │     c. On April 12, 2006, ROBERT MIRACLE, MUKHTAR KECHIK,

28 │       and FAHIMI FISAL caused $49,980 to be transferred from an

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       account belonging to MCube at Columbia State Bank, in

2       Washington, to an account belonging to MCube at Bank Niaga, in

3       Indonesia.

4   d.   On May 17, 2006, ROBERT MIRACLE, MUKHTAR KECHIK, and

5       FAHIMI FISAL caused $99,980 to be transferred from an account

6       belonging to MCube at Columbia State Bank, in Washington, to an

7       account belonging to MCube at Bank Niaga, in Indonesia.

8   e.   On September 6, 2006, ROBERT MIRACLE, MUKHTAR

9       KECHIK, and FAHIMI FISAL caused a $30,912.11 dividend/unit to

10       be paid to each Basilam LLC shareholder.

11   All in violation of Title 18, United States Code, Section 1956(h).

13                          **COUNTS 13-15**
                    **(Money Laundering – Promotion)**

15   58.   The Grand Jury realleges and incorporates, as if fully set forth herein,

Paragraphs 1 through 57 of this Indictment.

17   59.   On or about the dates set forth below, at Seattle and elsewhere, within the

Western District of Washington, ROBERT MIRACLE, MUKHTAR KECHIK, and

FAHIMI FISAL did knowingly and willfully conduct and attempt to conduct financial

transactions affecting interstate and foreign commerce, each of which constitutes a

separate Count of this Indictment, to wit:  the following transactions, which involved the

proceeds of a specified unlawful activity, that is, mail fraud and wire fraud in violation of

Title 18, United States Code, Sections 1341 and 1343, with the intent to promote the

carrying on of specified unlawful activity, to wit:  mail fraud and wire fraud in violation

of Title 18, United States Code, Sections 1341 and 1343, and while conducting such

financial transactions knew that the property involved in the financial transactions, that is,

funds and monetary instruments, represented the proceeds of some form of unlawful

activity.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date | Transaction | Amount and Purpose |
|---|---|---|---|
| 13 | 9/6/06 | Check written on account of Basilam LLC at Columbia State Bank, Washington, sent to S.C., in Colorado | $30,912.11 dividend payment on one unit of Basilam LLC |
| 14 | 9/6/06 | Check written on account of Basilam LLC at Columbia State Bank, Washington, sent to P.B., in Texas | $61,824.22 dividend payment on two units of Basilam LLC |
| 15 | 10/2/06 | Wire transfer from account of Basilam LLC at Columbia State Bank, Washington, sent to account of M.P. & L.P., at Wells Fargo Bank, Texas | $15,456.06 dividend payment on one unit of Basilam LLC |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 2.

## COUNTS 16-18
### (Money Laundering – Foreign Transfers)

60.    The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 through 57 of this Indictment.

61.    On or about the dates set forth below, at Seattle and elsewhere, within the Western District of Washington, ROBERT MIRACLE, MUKHTAR KECHIK, and FAHIMI FISAL did knowingly and willfully transport, transmit, and transfer funds from a place in the United States, that is, the State of Washington, to a place outside the United States, that is, Indonesia, with the intent to promote the carrying on of unspecified unlawful activity, that is mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, each transportation, transmission, or transfer constituting a separate Count of this Indictment.

| Count | Date | Transaction | Amount and Purpose |
|---|---|---|---|
| 16 | 3/24/06 | Transfer from account belonging to MCube at Columbia State Bank, Washington, to account belonging to MCube at Bank Niaga, Indonesia | $49,975 transfer to pay salaries of employees in Indonesia and other expenses |
| 17 | 4/12/06 | Transfer from account belonging to Diski LLC at Columbia State Bank, Washington, to account belonging to MCube at Bank Niaga, Indonesia | $49,980 transfer to pay salaries of employees in Indonesia and other expenses |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date | Transaction | Amount and Purpose |
|-------|------|-------------|---------------------|
| 18 | 5/17/06 | Transfer from account belonging to MCube at Columbia State Bank, Washington, to account belonging to MCube at Bank Niaga, Indonesia | $99,980 transfer to pay salaries of employees in Indonesia and other expenses |

All in violation of Title 18, United States Code, Section 1956(a)(2)(A) and 2.

## COUNTS 19-21
### (Money Laundering – Transactions in Criminally-Derived Property)

62.    The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 through 57 of this Indictment.

63.    On or about the dates set forth below, at Seattle and elsewhere, within the Western District of Washington, ROBERT MIRACLE did knowingly engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally-derived property of a value greater than $10,000, that is, the following deposits, withdrawals, transfers, and exchanges of United States currency, funds, and monetary instruments in the following amounts, such property having been derived from a specified unlawful activity, that is, mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, each of which transactions constitutes a separate count of this Indictment.

| Count | Date | Transaction | Purpose |
|-------|------|-------------|---------|
| 19 | 11/18/05 | $31,500 transfer from account belonging to Laramie at Columbia State Bank, Washington, to account belonging to American Express, Arizona | Transfer of funds subsequently used by ROBERT MIRACLE to make credit card payment to American Express, including partial payment for a credit card charge for the purchase by ROBERT MIRACLE of a 2.03 carat diamond ring for $38,358.54 |
| 20 | 9/26/06 | $35,000 payment from account belonging to Laramie at Columbia State Bank, Washington, to American Express, Arizona | Credit card payment for bill including charges for part of a $77,996.94 week-long cruise taken on the Norwegian Star by ROBERT MIRACLE and at least 10 family members |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date | Transaction | Purpose |
|-------|------|-------------|---------|
| 21 | 12/26/06 | $27,624 transfer from account belonging to MCube at Columbia State Bank, Washington, to account belonging to M.D.T. at Banco Popolare di Verona e Novara, Italy | Partial payment for purchase by ROBERT MIRACLE of the painting "La Maddalena" for 35,000 euros |

All in violation of Title 18, United States Code, Section 1957.

### COUNTS 22
### (Tax Evasion)

64.     The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 through 52 of this Indictment.

65.     During 2005, ROBERT MIRACLE deposited approximately $614,888.80 of funds from Laramie and MCube into ROBERT MIRACLE's personal bank accounts. During that same year, ROBERT MIRACLE wrote approximately $55,300.00 of checks from his personal accounts to Laramie and MCube. Thus, during 2005, ROBERT MIRACLE made a net transfer of $559,588.80 of funds from Laramie and MCube. ROBERT MIRACLE used the majority of this money for personal living expenses.

66.     In early 2006, Laramie prepared a Form W-2 that showed that ROBERT MIRACLE had earned $263,300.12 of wages from Laramie during 2005. In early 2006, MCube prepared a Form W-2 that showed that he had earned $267,162.86 of wages from Mcube during 2005. In or about May 2006, ROBERT MIRACLE submitted these Forms W-2 to his accountant, S.P. Based upon these documents, S.P. prepared a Form 1040 for ROBERT MIRACLE that showed $530,762.98 of wages for 2005. S.P. provided this Form 1040 to ROBERT MIRACLE for signature and filing with the IRS, but ROBERT MIRACLE did not file the form with the IRS.

67.     ROBERT MIRACLE subsequently told a bookkeeper working for Laramie and MCube that funds he had received from Laramie and MCube were loans, rather than wages, and that his Forms W-2 needed to be amended to reflect this fact. As a result, ROBERT MIRACLE caused the bookkeeper to prepare a new Form W-2 for Laramie that showed that ROBERT MIRACLE had earned only $20,000 of wages during 2005.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | ROBERT MIRACLE caused the bookkeeper to prepare a new Form W-2 for MCube that
2 | showed that ROBERT MIRACLE had earned only $12,000 of wages during 2005.  In
3 | about October 2007, ROBERT MIRACLE submitted these new Forms W-2 to S.P.
4 | Based upon these documents, S.P. prepared a new Form 1040 for ROBERT MIRACLE
5 | that showed only $32,000 of wages for 2005.  On October 15, 2007, ROBERT
6 | MIRACLE signed this Form 1040 and filed it with the IRS.  This Form 1040 understated
7 | ROBERT MIRACLE's wages by approximately $527,588.80 and understated ROBERT
8 | MIRACLE's tax liability by approximately $148,927.

9 |     68.   In or about October 2007, at Seattle and elsewhere, within the Western
10 | District of Washington, ROBERT MIRACLE knowingly, willfully, and unlawfully
11 | attempted to evade and defeat a substantial part of the income tax due and owing by him
12 | to the United States of America for the 2005 calendar year by various means, including,
13 | among other things:  by causing to be prepared Forms W-2 for Laramie and MCube that
14 | falsely reported that ROBERT MIRACLE had earned only $32,000 of wages from these
15 | companies during 2005; by providing these forms to his accountant for use in preparing
16 | ROBERT MIRACLE's taxes; and by signing and filing with the IRS a false and
17 | fraudulent United States Individual Income Tax Return, Form 1040, on which ROBERT
18 | MIRACLE underreported his wages by approximately $527,588.80 and underreported his
19 | tax liability by approximately $148,927, whereas, as ROBERT MIRACLE well knew, his
20 | wages, and tax due and owing, should have been increased by approximately these
21 | amounts.

22 |     All in violation of Title 26, United States Code, Section 7201.

### COUNT 23
### (Forfeiture)

25 |     69.   Upon conviction of one or more of the offenses alleged in Counts 12
26 | through 21 of this Indictment, ROBERT MIRACLE, MUKHTAR KECHIK, and
27 | FAHIMI FISAL shall forfeit to the United States pursuant to Title 18, United States
28 | Code, Sections 982 and 984, all interest in any property involved in such offense and any

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    property traceable to such property, including, but not limited to, the following:

2          a.    a money judgement in the amount of $28,612,750.24, representing

3                the proceeds involved in, and obtained as a result of, the offenses

4                charged in Counts 12 through 21 of this Indictment;

5          b.    a 2.03 carat diamond ring purchased by ROBERT MIRACLE from

6                International Jewelers; and

7          c.    a painting titled La Maddalena purchased by ROBERT MIRACLE in

8                Venice, Italy.

9    If any of the above-described forfeitable property, as a result of any act or omission of the

10   defendants, (1) cannot be located upon the exercise of due diligence, (2) has been

11   transferred or sold to, or deposited with, a third person, (3) has been placed beyond the

12   jurisdiction of the Court, (4) has been substantially diminished in value, or (5) has been

13   commingled with other property which cannot be subdivided without difficulty, it is the

14   intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  seek forfeiture of any other property of defendants, up to the value of the above

2  forfeitable property.

3

4      DATED this 17TH day of DECEMBER_____, 2008.

5

6

7                                      A TRUE BILL:

                                       DATED:  12/17/2008
8

9                                      Signature of Foreperson redacted
                                       pursuant to the policy of the
10                                     Judicial Conference of the United States.

11                                     FOREPERSON _____

12

13

   JEFFREY C. SULLIVAN
14 United States Attorney

15

16

   CARL BLACKSTONE
17 Assistant United States Attorney

18

19

   ANDREW C. FRIEDMAN
20 Assistant United States Attorney

21

22

23

24

25

26

27

28

INDICTMENT/MIRACLE (CR08-____) - 30